HERSEY, Judge.
This case presents the classic example of an internecine struggle between the executive and legislative branches of the government of a municipality to control its purse strings. The precise issue is whether the mayor or the city council of the City of Sunrise ultimately establishes the city’s budget.
The mayor, appellee here, prepared and submitted to the city council a proposed budget for the 1981-82 fiscal year. The city council amended the budget in several material respects and then adopted the amended budget by ordinance. The mayor then vetoed the ordinance, whereupon his veto was overridden by vote of the council.
The mayor refused to implement the budget ordinance and the city council filed suit seeking injunctive and declaratory relief by petition for writ of mandamus. The mayor counter-claimed seeking similar relief.
The trial court determined that under the Home Rule Charter of the City of Sunrise the city council was empowered only to accept or reject the budget as submitted by the mayor and was without authority to adopt amendments to the budget. Ordinance No. 534-X, the budget ordinance, was therefore declared invalid. The city was directed to operate on its 1980-81 budget on a month-to-month basis “until such time as the Mayor submits a budget to the City Council which will then be either accepted or rejected by the City Council. This process will continue until such time as *491 the City Council accepts a budget submitted by the Mayor and adopts said budget.” The trial court also awarded attorneys’ fees and costs to both parties, to be paid by the City of Sunrise because the “controversy affects the public interest of the citizens of Sunrise.... ”
The members of the city council filed this appeal seeking to have the final judgment reversed as it (1) invalidated the budget ordinance and (2) awarded attorneys’ fees to the mayor.
We determine that attorneys’ fees were properly awarded and affirm that aspect of the final judgment. City of Hialeah v. Bennett, 376 So.2d 483, 484 (Fla. 3d DCA 1979), adopted the following rule as set out in Cahn v. Town of Huntington, 29 N.Y.2d 451, 328 N.Y.S.2d 672, 676, 278 N.E.2d 908, 910 (1972):
[A] municipal board or officer possesses implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where the municipal attorney refused to act, or was incapable of, or was disqualified from, acting.
The validity of the budget ordinance depends upon interpretation of the Home Rule Charter of the City of Sunrise and any possible application to it of Chapter 166, Florida Statutes (1981), the Municipal Home Rule Powers Act.
We find nothing in that statute or in the general law that would prohibit a municipality from conferring the budget power on either the executive or the legislative branch, or on some combination of both branches.
Each party to this appeal strongly urges that the answer is to be found in three sections of the city charter. Predictably the parties vie for interpretations that are diametrically opposed one to the other.
The powers and duties of the mayor are established by section 4.04 of the charter which includes:
(e) Prepare and submit the annual budget and capital program to the council as provided under article Y.
(f) Submit to the council and make available to the public within a reasonable time a report on the finances and administrative activities of the city as of the end of each fiscal year.

(h) Keep the council advised as to the financial condition and future needs of the city and make recommendations to the council concerning the affairs of the city.
(i) Purchase supplies and noncapital equipment and contract for repairs and improvements for the various departments of the city in an amount which shall be determined by ordinance from time to time by the council.
The mayor’s veto power is set out in Section 4.05 as follows:
Any ordinance or resolution adopted by the council shall be presented promptly to the elected mayor for his consideration and recommendations. The mayor shall have at least ten (10) days in which to accept or veto such ordinance or resolution. If he approves the ordinance or resolution, he shall sign it; and it shall become effective according to the terms thereof. If he disapproves, he shall veto and return the ordinance or resolution to the council without his signature, accompanied by a message indicating the reasons for disapproval and recommendations. The council may override the may- or’s veto by a four-fifths vote of the whole council at the meeting in which the disapproval of the mayor is received.
Any ordinance or resolution adopted by the council may be vetoed by the mayor and shall be returned to the council at or prior to the next regular meeting of the council occurring ten (10) days or more after the date when the ordinance or resolution was delivered to the mayor’s office for consideration.
The mayor contends and the trial court held that the mayor is to submit a proposed budget to the city council which may either approve (by enacting it as an ordinance) or *492 disapprove the budget. In the case of non-approval the budget is to be returned to the mayor who may then make such changes as he deems appropriate and the budget is to be then resubmitted to the council which, again, may either approve or disapprove. This exchange continues until a budget obtains the approval of the city council.
Appellants, on the other hand, argue that a budget submitted by the mayor may be approved, disapproved or changed, item by item, by the council, and resubmitted to the mayor for signature. The mayor may approve and sign or he may veto the budget ordinance. The city council may override such a veto whereupon the budget is deemed approved and final.
This latter interpretation is much more practical than the result mandated by the final judgment. Particularly is this so in view of the fact that the city is required to proceed month to month on the budget for the preceding fiscal year until a current budget is finally approved. Population growth and inflation factored into the financial picture make it obvious that a municipality so encumbered would soon be in dire straits.
We are satisfied that in the majority of cases where the fiscal responsibility of government is shared between the legislative and executive branches the ultimate authority lies in the legislative branch. Appellants’ expert witness testified that such was the case in municipal charters in the State of Florida with which he had a working knowledge (involving some 383 cities) and that this trend was supported by much broader historical precedent nationally and internationally. This view is persuasive but obviously not controlling.
The language of the city charter places the responsibility for preparation of the budget and budget message on the mayor and the responsibility for adopting a budget, in the form of an ordinance, on the city council. It does not specifically speak to impasse resolution should the mayor and council ultimately be unable to agree. There is language in the charter, however, which supports the conclusion that raising and expending sums of money is, in the final analysis, a legislative function to be performed by the council.
Sections 3.01 and 3.07 provide that the city council shall have and exercise all lawful legislative powers of the city and shall make all policy except as otherwise provided by the charter.
Section 4.04 which authorizes the mayor to purchase supplies and noncapital equipment and contract for repairs and improvements for the departments of the city limits the mayor’s authority in that regard to such amounts as may be determined by ordinance from time to time by the city council.
The mayor prepares a five year capital program under section 5.03 which the council may adopt by resolution.
Supplemental appropriations during the year from surplus revenues may be made by the council pursuant to section 5.05(1).
Section 5.05(2) gives the council the power during the year to reduce one or more appropriations when a deficit is anticipated.
In an emergency the council, by section 5.05(5), is authorized by emergency ordinance to make an emergency appropriation.
These provisions of the charter would seem to indicate that ultimate fiscal responsibility reposes in the city council rather than the mayor.
Another factor that we have taken into account in attempting to interpret the charter on this issue is the rule of construction that an interpretation of legislation that would produce unreasonable consequences is to be avoided. See, e.g., Wakulla County v. Davis, 395 So.2d 540 (Fla.1981). Under the mayor’s interpretation of the charter, the budget could conceivably pass back and forth between the mayor and council ad infinitum. The city might never have a current budget. Such a drastic result is not lightly to be imputed to a legislative scheme. Appellants’ position, on the other hand, involves a built-in mechanism for impasse resolution. The budget is prepared by the mayor, submitted to the council, approved, or amended and approved, by *493 the council, returned to the mayor for final approval or, should the mayor exercise his veto power, then finally approved by council’s action in overriding the veto. It is true that an impasse might be created even under appellants’ interpretation if the council could not muster enough votes to override the mayor’s veto but that possibility is not before us in this case.
We therefore reverse the final judgment and remand for such further proceedings as may be required to effectuate the interpretation which we here place upon the city charter concerning approval and adoption of the city’s budget.
REVERSED and REMANDED.
HURLEY and DELL, JJ., concur.